May it please the court, Mr. Chief Judge. My name is Jason Owens. I represent Washington County, Arkansas, Deputy Sheriff Rick Hoyt, who made a disclosure in response to an FOI, Freedom of Information Act request in this case. I'll begin with an argument that is because his disclosure was made last, the information at issue here had already been made public. Thus, under any postulation of a privacy theory, the information had already been made public and therefore the plaintiff's claim would fail. When was the identity of the fallback argument for the Duggars with respect to the county? Because they concede in their complaint and also on page 26 of their brief on appeal that Officer Hoyt released the county's report, redacted report, a day after the city released. The city released by email and the county released by snail mail, by physical mail. There's no allegation of publication of the county's report, but the argument against the county has morphed into what your honor asserted there, which is that there's a reference to somebody being five years old. The name is redacted, of course, all the names are redacted in both reports. But I think that speaks to the reasonable notice component of qualified immunity. Is it privacy? Even where your name is redacted, privacy with respect to your age? Of course, our position is that there's no such case out there. In fact, if you delve into the position of the Duggars, the Applees, and I'm going to refer to them as the Duggars even though some of the names have changed as they've married. Qualified immunity is all about reasonable notice to the public official. Here, there is no Supreme Court case even recognizing a right to what's been referred to in this case as informational privacy as opposed to the other components of privacy that have been recognized by the court. That's really important here because privacy itself is a recognized right, not a textual right. You can't go to the Constitution like you can with the fourth, eighth, or first amendments and read about the right of privacy because there's no language in the Constitution to that effect that was famously located in the penumbra. And so we've got to go from the cases. The Supreme Court in all of these cases where it's dealt with this issue has assumed the right and then found no violation even where the right is assumed. But have any of those cases had facts like we have in this case? Not precisely like this. The same goes for this court. This court has assumed the right is referred to it as a notion of a substantive due process right to informational privacy. And then even where that right is assumed in all the cases this court has dealt with, even factually dissimilar, they found no violation. Now that spans a wide spectrum from more modest disclosures to things like photographs of a parent's, of a child's corpse in one case, a social security number, which we would all. In the corpse case that was a public viewing of a, that was already disclosed. I mean it was. Well there's also the social security number case where, you know, I think most folks would say social security numbers ought to be private. This court held the opposite. That there is even assuming a privacy right. Does it matter that state law protected this information and to be confidential and not disclosable by law enforcement? Well that's far from certain. There are no cases citing, no cases cited by anyone and no cases that I've found where any disclosure under the FOIA has ever been met with civil or criminal liability. All the liability under the FOIA flows in the other direction when you don't disclose. But there's a tension in Arkansas law between the FOIA and the Child Maltreatment Act. The Child Maltreatment Act seems to say this is not information that's supposed to be disclosed. Well there's alleged tension. So there's no cases saying that. No cases that have ever said that if you disclose this type of information you're going to be liable. That's true counsel, but don't we have a statute that very, very clearly establishes Arkansas law on that point? No your honor, I don't think so. First of all, the juvenile code statutes all speak to records of juvenile arrest and criminal proceedings flowing from those arrests. There was never an arrest made here. There were never any criminal proceedings. That statute just simply doesn't apply. The Child Maltreatment Act similarly doesn't name county sheriff's offices as an organization under that act. Well it applies to an Arkansas Attorney General opinion that I believe arose after this that indicates that maybe counties are one of those things. But even if they were, the Child Maltreatment Act is so ambiguous it loses all meaning. It says, and I'll quote from the plaintiff's brief, any data, records, reports, or documents that are created or collected or compiled by or on behalf of the Department of Human Services, Department of State Police, or other entity authorized under this subchapter shall not be subject to disclosure. There's no regarding clause in the act that don't describe what data or records. Are we to read this statute to mean that all state police records are exempt from the FOIA? It's a nonsensical reading. And so if a non-lawyer like my client reads this statute, there's no way he could come to the conclusion that that exempts one record instead of another or all of them. Is he free to ignore the Freedom of Information Act? I think not. I think that's... Was the decision made with legal counsel's direction or guidance? There's no allegation of that in the complaint. And I would add that importantly on these statutory questions, the Arkansas General Assembly, when this happened and was public, amended these statutes to address this specific circumstance. Now, why would they do that if it was so clear? I think that is the ultimate argument that the appellees have never responded to. The General Assembly need not amend these statutes if they were so clear. And I'll leave it at that. My co-counsel needs to argue as well. Thank you, Your Honor. Thank you, Roy. Or Mr. Elwins, excuse me. Mr. Ackman? Thank you, Your Honor. My name is Justin Ackman, and I represent the appellants Cathy O'Kelley, the former police chief, and Ernest Cate, who is the city attorney of the city of Springdale. I'd like to address qualified immunity, if I may, because it's our belief that qualified immunity should be afforded to both O'Kelley and Cate in this case because they could not have been put on notice that the redaction and the release of a police report pursuant to a Freedom of Information Act request would violate a person's substantive due process right of the 14th Amendment. Our argument is that the district court in this case applied an incorrect broad view analysis of what constitutes clearly established law in this district, in that the district court cannot have found a robust consensus of cases of persuasive authority established. So would the remedy then be to send it back for the court to do a proper analysis as opposed to a broad view analysis, an analysis more in line with Supreme Court precedent that that you need pretty close facts to in order to have a claim? No, Your Honor, I would believe that this court could could make that decision because there simply is, as a district court noted in the order, that there is no controlling case within the district with facts that are analogous to this case, nor do we believe that there's a consensus of such cases. As my this district has a series of cases implicating the notion of an informational right of privacy without finding such a motion and that seems to be the standard as well with the cases before the United States Supreme Court. Let's talk about the Eighth Circuit case law that you mentioned. Yes, sir. Even though they've never found a violation, it seems to me that the Eighth Circuit case law describing the informational right to privacy places that right in a very, very small box. It's a very, very narrow right. Doesn't that sufficiently define the contours of this right for purposes of qualified immunity analysis? Your Honor, respectfully, I would say that it does not. I believe the purpose behind the specific inquiry is to be able to set what those contours are. And first, I would believe that with regard to the Pfeffer case, Pfeffer case was about an official who went on a radio program and released information about a police entrance exam versus a police entrance exam. The court in Pfeffer noted, I think was pointing to a Ninth Circuit, sort of an admonition of what the standard of an informational right of privacy is. But also, there's some language at the end of that that states that the information must be to further some specific state interest. There is no discussion of what that language means, but if you follow those cases back, if you look at Davis III that was cited out of the Ninth Circuit and U.S. Nixon, other cases like that, there's a balancing test that occurs because this is a unique case where you have the Freedom of Information Act, which is a penal act. There are criminal penalties attached to it for noncompliance. And so this is a case where you have an official who's not going on a radio program, not in a press conference as in Block v. Rybar out of the Sixth Circuit, but is acting pursuant to a Freedom of Information Act request that has criminal penalties. And there's also a specific provision in the Freedom of Information Act that says you cannot deny a Freedom of Information Act request due to a commingling of information. And further, that if you can redact, if you can remove the exempt information, then you must do that and disclose. And that's backed up by decades of case law. No, the problem was the redaction was so ineffectual. Your Honor, there is no allegation that states that it's ineffectual. The allegation is that in, I believe it's paragraph 67 of their complaint on the Joint Appendix page 19 and 20, that sleuths on the internet on a fan page for the Duggars looked at the length of the redactions and determined what the name, what, you know, guessed what the names might be. There are no allegations that that information was ever confirmed by the City of Springdale or by Washington County, nor that that information included anybody's name, anybody's age, any identifying pronouns. Had there been similar FOI requests for information like this before that had been provided? Your Honor, it is a common practice, an everyday practice in the state of Arkansas to receive FOI requests of police reports in which information has to be redacted. Involving minor victims of child maltreatment. Yes, Your Honor. And Your Honor, I'm going away from the allegations in the complaint, but absolutely it's an everyday occurrence where an FOI is received by, and an officer within a department or in a city has to make that determination and has to look at that case law in Arkansas that favors disclosure and says that you need to redact. But in child maltreatment cases? I'm sorry, Your Honor, there is no cases dealing with the tension between the FOI and the Child Maltreatment Act. Those cases have not occurred. And I do see that I'm going into my rebuttal time here. I don't know if there are any further questions from the panel. Well, as you do that, back to our Eighth Circuit case law, why wasn't, you know, citing from Eagle versus Morgan, why wasn't this a shocking degradation or an egregious humiliation? Your answer is it wasn't, I guess. No, it simply wasn't. It was a redacted report of which people on the internet guessed at who the identity of these people were without confirmation from the city or from the county. And again, you have, this is all done pursuant to a Freedom of Information Act request. And so that balance between the government interest and the private interest. Well, are you making a good faith reliance thing? The statute permits us or requires us to do this. Therefore, it could not be shocking or egregious? Yes, Your Honor, because that is what the direction of the FOI requires. Thank you. Thank you. Ms. Jewell. Mr. Chief Judge, and may it please the court. This honorable court should affirm the district court's denial of appellant's motion to dismiss, and the case should proceed to trial. This court should affirm for two main reasons. First, appellants are not entitled to qualified immunity because they violated the clearly established constitutional privacy rights of appellees who were minor victims of sexual assault. What gives us the law that makes it clearly established? So, regarding the violation prong, in a privacy context, this court and EGLE has set out a clear standard in the 1996 case based on Alexander V. Pfeffer, a 1993 case, stating that there is a constitutional right. And Your Honor, in just a second, we'll get to the clearly established, but I want to make clear the difference between the violation and the clearly established because replete throughout the city appellant and county appellant's briefs is this conflation of the violation of a right and whether it was clearly established. And so, I want to clearly delineate. In EGLE, this court held that a violation of the constitutional right to privacy requires a or egregious humiliation or a flagrant breach of confidentiality that was instrumental in obtaining that private information. There is most certainly a privacy right that this court has recognized, that the Supreme Court has recognized. And in the Eighth Circuit, this is what we look at when we're analyzing that privacy right. Now, in order to determine whether that right is clearly established, this court has held numerous times, we look to the contours of the right to see if it's sufficiently clear that a reasonable officer... And isn't that kind of the problem here is that the Supreme Court has kind of been fuzzy about the contours of the privacy right? Your Honor, I'll agree with you that there could be some perceived fuzziness. With respect to disclosure anyway. There could be some perceived fuzziness in that there aren't any facts that are in any other decision that are quite so egregious. However, the law is absolutely clear that there does not need to be a specific case in point for the law to be clearly established. That's why we have this reasonable officer standard. And in our case, what we're looking at is not just some random patrolman. These are the officers of our city and county who are charged with fulfilling Freedom of Information Act requests. And when there are statutes that absolutely are on point, one of them titled non-disclosure of information about victims, when you're charged with making the disclosures and the general assembly has passed and is the law, then a reasonable officer would know that you cannot disclose information about sexual assault victims, minors, or especially... Is there anything in the record to indicate the officers even considered the Arkansas Act before it made the disclosure? There's nothing to consider that... There's nothing in the record showing that they even considered it before. But immediately after, like the next day, the city tried to submit a better redacted report because they received, we believe, of course this is a motion to dismiss, we haven't done discovery, but backlash online about what they had done. So they went to DHS, the Municipal League Council, to see if it was okay afterwards. Doesn't Arkansas law also allow for an extension of the deadline in situations where they need to do further analysis? Yes, Your Honor, and in everyday practice like mine, when I am building up a case, I am getting information pursuant to the Freedom of Information Act all the time, so that before I file my complaint, I have well-pled allegations. And numerous times have I been granted an extension when a county or a city or whatever the entity is reaches out and says, we're compiling it, we acknowledge your request, these are the reasons why we're having trouble getting it together. So yes, in practicality, it happens all the time. Appellants O'Kelley, Cate, and Hoyt here got wrapped up in this media frenzy. It is yet to be seen in discovery why and what their motives were. However, it is absolutely clear that this court standard is a shocking degradation or egregious humiliation, and the district court was absolutely correct in the precedent that it applied and its ultimate conclusion that there is nothing conceivably more shocking than this. To the second point of that, we've talked a lot about the shocking degradation or egregious humiliation. This test in Eagle and Alexander v. Pfeffer requires one of two things, actually, but both apply here. The second one we haven't talked about so much is the flagrant breach of confidentiality. And as alleged in the complaint in numerous paragraphs throughout the 39-page complaint, and I can cite the specific paragraphs for you if you want, but it was alleged throughout the complaint that the information was absolutely to remain confidential. The alleged abuse happened in 2002 and 2003. At that time, the Appellees, nor their parents, went to any agencies to report anything. They, for whatever reason, kept it confidential. In 2006, the way the police department found out about it is that there was an Arkansas State Police Child Abuse Hotline anonymous tip. So the police began to investigate. They took these minor children to the Children's Safety Center in Springdale, which is a safe space where children who are victims of sexual assault can talk to investigators. And they were promised that their statements would remain confidential. This is 2006. There were no charges filed against the perpetrator due to the statute of limitations, which only compounds the thought that this is going to remain confidential because it's not part of a public record, even indirectly. And then the disclosures that we're talking about, it's nearly 10 years after that. So there are so many different compounding layers here of this expectation of confidentiality. And the Eighth Circuit in EGLE has specifically said, when we're looking at this test and this standard, we're looking at whether there was a legitimate expectation of confidentiality. So all of those facts that I stated to you as to confidentiality creates a quite legitimate expectation of confidentiality. And that's exactly the standard that the district court applied. Counsel, do you agree that the district court's use of a broad view standard for clearly established right is not consistent with the precedents of this court most recently? Mr. Chief Judge, I do understand that that is what city and county appellants allege that the court has applied a broad view standard. But in reading the district court opinion, which is document nine of the appendix, specifically on page 15, the district court explained specifically that the United States Supreme Court and Hope v. Pelzer in 2002 refined its analysis from needing specific cases on point to instead looking at whether a reasonable officer knew that the conduct violated the rights and actually ruled on this. And so the standard that was applied by the district court is absolutely step-by-step in line with the way the Eighth Circuit has looked at these issues. And the reason that city and county appellants focus in their briefs or even in argument on what the standard is and how to follow it is because it's absolutely awful for them. This case clearly is what this test anticipates. It doesn't matter that the Eighth Circuit has never had the facts before it previously to... Every reasonable official would have known that was clearly prohibited, the disclosure was prohibited? Precisely, Your Honor, especially because the officers we're talking about here are the Springdale Chief of Police, the Springdale City Attorney, and an officer in the Washington County Sheriff's Department. These are the people charged with the duty of taking a FOIA request, seeing if there are exemptions, and deciding what can be the disclosure. Yes, Your Honor. You don't have to rely on common law or EGLE or any of our cases? In other words, is your case can survive on the basis of the statutory restrictions? Is that your argument? Or does it rely upon the... In other words, do the officers have to be familiar with... Was it Louis Brandeis's 1896 Law Review article in the Harvard Law Review about the right to privacy? No, I don't mean to be facetious about that. But what level of knowledge is a reasonable police officer required to possess? I think it's different depending on the duties of the police officer that you're talking about. So, like, a Fourth Amendment context is going to be completely different. In this context, is it expecting too much of officers in a reasonable world to put them on EGLE, which violates both the statute and the common law right to privacy? It is absolutely not too much, especially, as I said, but as I think is really important when these are the people whose duties are to decide what the exemptions are. We have two statutes, and it's not a new thing that the law protects sex assault victims and minors in a different way than it does, say, offenders. That is a huge distinguishing factor in a lot of the cases that are cited and that are relevant here, and that in their brief, county appellant Hoyt actually discusses, but absolutely misses the mark. So Hoyt actually says, under the law, we have sex offender registries, and there are mug shots. Those are embarrassing and humiliating, but that is absolutely absurd, for lack of a better word, because these are offenders. More than that, they're adults, and it's part of the public record, and as the chief judge mentioned when speaking with city appellant's attorneys a few moments ago, there is a big difference in this case law when something was public anyways, as was the case in Eagle. Eagle, as well as the Tenth Circuit Nielsen case that Eagle cites too, Eagle involved a guilty plea, and Nielsen, the Tenth Circuit case, involved a criminal history report. Both of those things have to do with public records and have to do with offenders, which is completely different. The statutes here are 1218-104-A and 1690-1104-B, and the counsel for county appellant said that the Child Maltreatment Act, which is 1218-104-A, is just really unclear and actually read it to you, but your honors, the act is called the Child Maltreatment Act, and it specifically says that any data, records, reports, documents created, collected, or compiled on behalf of DHS, the state police, or any other entity performing investigations or services to children, individuals, or families shall not be subject to disclosure. That is absolutely clear. Likewise, statute 1690-1104-B, titled Non-Disclosure of Information about Victims, specifically states that the information that was disclosed in these very poorly redacted reports, it cannot be disclosed about victims of sexual assault. So while the minor's names may have been redacted, it says their parents are Michelle and Jim Bob Duggar. It has their addresses. It has very crude details of the assault, such that when they were published, there was a large warning at the top, warning graphic depictions, so that the reader would beware, and these were children, as your honor mentioned, as young as five years old. Counsel, let's turn for a moment to the State Tort Claims Act allegations. Does your complaint allege more than mere negligence as to the defendants in that regard? Absolutely, your honor. We actually sued the defendants for specifically intentional torts and section 219301 statutory immunity. Arkansas Supreme Court case law is clear that it does not apply to intentional torts, and those are the allegations in the complaint against both defendants. Thank you, Ms. Jewell. Thank you, your honor. Rebuttal. Thank you, your honor. Judge Willman, to your specific case about whether the statute in question could form the contours, the counsel for the appellee relied upon Eagle v. Morgan, which states that in that case, there's language from this court that the Constitution doesn't provide a remedy for every wrong, but that state, also that state statutes fall short of the kind of proof necessary to establish a privacy right, and that direction also, I think, has been given to the courts by the Supreme Court in White v. Pauley. The court said that an appellee must identify a case that exists, and in this case, there is no certain case. And Judge Graz, for one, for response to your question about an extension of the FOI, the FOI requires immediate response three days if the record is inactive in storage. There is no provision in section 105A, of the subsection 105A, for foreign extension, and that's why it's critical that an analysis of this case be looked at in view of the FOI and its requirements. Is that true even when legal counsel is being sought to advise the disclosing agency? That is correct. The statute is very clear. Immediate response in 105A, immediate response three days if you can certify that the record is in active storage. Sometimes counsel will give you leeway, opposing counsel, if you contact them and ask. Did you request an extension? Did the parties hear the defendants? There's no allegation in the complaint of a request or a granting of an extension. May I ask one question, Chief? Yes. I should have asked this of Mr. Owens, because I missed his answer. The Arkansas Legislature amended the statute to do what? The Arkansas, they amended the statute to make it clear that an arrest record of an adult, and in this case, that's what we're dealing with, an arrest record of an adult, for crimes that occurred while that adult was a child, that include the maltreatment of children, are also exempt. I see. And so it was amended to address this very issue. Thank you. Thank you, Your Honor. Thank you, counsel. The court wishes to thank all counsel for your presence this morning and the argument you've provided to the court. The briefing that you've submitted will take the case under advisement.